# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| TRAVIS M. HOUSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-00070 |
| | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this Social Security Appeal, Magistrate Judge Frensley has issued a Report and Recommendation ("R&R") (Doc. No. 25) in which he recommends that Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 18) be denied, and that the decision of the Commissioner denying benefits be affirmed. Plaintiff has filed an Objection (Doc. No. 26) to the R&R raising two specific complaints and a more general complaint that Magistrate Judge Frensley's "decision consists of 23 pages of relevant law and a complete reproduction of the ALJ's recitation of the medical evidence before any discussion of Plaintiff's contentions even begins[.]" Id. at 8. How Magistrate Judge Frensley chose to structure his decision is, of course, largely irrelevant, so long as he properly applied the governing law to the facts. Accordingly, the Court turns to the specific objections.

First, Plaintiff argues that "the ALJ failed to properly assess the opinions of Plaintiff's three treating physicians, including her [sic] primary care physician, Dr. Bray, neurosurgeon, Dr. Standard, and physical medicine and rehabilitative specialist, Dr. Le." (Id. at 1). Just as he did in his initial briefing, Plaintiff then spends several pages laying out particular evidence supporting his claim of disability. This is understandable, but "[m]erely marshaling evidence to suggest that he is

disabled . . . is insufficient; to prevail on appeal, [Plaintiff] must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence." Peterson v. Comm'r of Soc. Sec., 552 F. App'x 533, 540 (6th Cir. 2014). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009). Very recently, the Supreme Court described "substantial evidence" as follows:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Although Plaintiff certainly can believe otherwise, there was more than a mere scintilla of evidence to support the ALJ's conclusion and, by extension, the recommended affirmance of that conclusion by Magistrate Judge Frensley. Neither ignored the treating physician evidence that was in the record. Specifically, recounting the ALJ's conclusions, Magistrate Judge Frensley observed:

> Acknowledging the longitudinal treating relationship and specialization of Dr. Bray as Plaintiff's primary care physician (TR 28-29), Dr. Standard as a treating physician (TR 29), and Dr. Le as a treating pain management physician (TR 29-30), the ALJ ultimately determined that those treating physicians' opinions were not due controlling weight because they were inconsistent with, and unsupported by, other evidence of record. Specifically, the ALJ explained that Dr. Bray's reported

2

> limitations were not consistent with her own treating notes and subsequent examinations, objective studies, Plaintiff's conservative treatment of wearing wrist splints at night, and Plaintiff's own testimony and self-reports. TR 28-29. With regard to discounting Dr. Standard's opinion, the ALJ explained that Dr. Standard's opined limitations were "out of proportion" with the objective medical evidence of record; in particular with EMG findings, Plaintiff's self-report, Plaintiff's daily activities, and the physical examinations of record. TR 29. As to the limitations opined by Dr. Le, the ALJ explained that Dr. Le's opinion was generally consistent with the statements provided by Drs. Bray and Standard and that she declines to accord controlling weight to Dr. Le's opinion "for the same reasons as the opinions from Dr. Bray and Dr. Standard"; namely, the objective evidence including EMGs and physical exams does not support the opined upper extremity exertional restrictions and the record further does not support the opined limitations in concentration and attention or the need for additional breaks. TR 29-30.
>
> \* \* \*
>
> When opinions are inconsistent with each other and/or the evidence, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2). Because there were contradictory opinions in the record, because the ALJ properly discussed the medical, testimonial, and opinion evidence of record, because the ALJ appropriately explained the weight accorded to the opinions and the reasons therefor, and because those reasons were supported by the evidence of record, the ALJ's evaluation of the medical evidence was proper, as was the ALJ's determination with regard to Plaintiff's physical limitations and the resultant physical residual functional capacity. Accordingly, the ALJ's decision on these points stands.

(Doc. No. 25 at 24). Upon *de novo* review of the record, as cabined by the "highly deferential" substantial evidence standard, Somberg on behalf of Somberg v. Utica Cmty. Sch., 908 F.3d 162, 173 (6th Cir. 2018), this Court agrees for the reasons cogently articulated by the ALJ and Magistrate Judge Frensley.

Second, Plaintiff argues that the ALJ erred by affording Dr. Cynthia Rector, his long-time treating psychologist, only some weight. Rather, he insists, her opinion should have been given controlling weight because "it was fully supported by Dr. Rector's own examination findings." (Doc. No. 26 at 11).

3

The ALJ chose to discount Dr. Rector's opinion as to work limitations, and had an ample basis for doing so. While Plaintiff points to many examples in the record where he complained of hopelessness, feeling unworthy, lacking motivation, sleeping excessively, and having obsessions, among other things, those reports are not self-proving. Indeed, and as the ALJ observed, "the mental health status exams of record . . . consistently noted cooperative behavior, and an ability to concentrate in the room despite distractions." (A.R. 25).

In a Mental Capacity Assessment dated October 22, 2015, Dr. Rector diagnosed Plaintiff with "OCD, Major Depression." She then scored the degree(s) of limitation caused by the diagnosis in eleven subcategories related to "Understanding and Memory" and "Sustained Concentration & Persistence." For all but two categories, Dr. Rector rated Plaintiff as having only a "slight" or "moderate" limitation, with the former meaning "there is some mild limitation in this area, but the individual can generally function satisfactorily," and the latter meaning "the individual will have intermittent difficult performing in this area" *i.e.*, "the person can generally perform satisfactorily in this area, but not always." The sole exceptions were (1) "the ability to complete a <u>normal workweek</u> without interruptions from psychologically based symptoms," and (2) "the ability to complete a <u>normal workweek</u>" because of those symptoms. (Doc. No. 13, A.R. at 416) (emphasis in original). For both, Dr. Rector noted a "marked" limitation, explaining that Plaintiff "has obsessions which require mental effort to control and which take time away from concentrating on work." (<u>Id.</u>).

Plaintiff argues that in her residual functional capacity to work determination,[1] the ALJ did

---

[1] The ALJ found that Plaintiff could perform light work, and that he:

was able to understand, remember, and perform simple and detailed 1-2-3 step tasks and instructions, and he was able to sustained concentration, pace and persistence for those task

not properly account for these limitations, and specifically Plaintiff's obsessive-compulsive disorder ("OCD"). He cites to the National Institute of Mental Health's website and its definition of obsessive-compulsive disorder,[2] and posits that the ALJ erred by "completely fail[ing] to explain how a restriction to 'limited workplace changes, and simple and detailed tasks' could possibly address Plaintiff's obsessive-compulsive impairments." (Doc. No. 26 at 12). Rather, "[t]he ALJ must build a logical bridge between the evidence and h[er] conclusion." (Id.) (citing Warrick v. Colvin, No. 3:13-CV-00346, 2014 WL 2480589, at *11 (M.D. Tenn. June 3, 2014); Smith v. Comm'r of Soc. Sec., 5:13 CV 870, 2014 WL 1944247, at *6 (N.D. Ohio May 14, 2014)).

Plaintiff's reliance on the NIMH's website hardly advances the ball because that same website indicates that OCD can range from mild to severe, that symptoms "may come and go, ease over time, or worsen," and that "most patients with OCD respond to treatment[.]" This would seem to encompass Plaintiff's compulsions relating to counting his steps and the coins in his pocket. Regardless, bridges, even metaphorical ones, must be built on solid foundations, and it was not error for the ALJ to conclude that her RFC assessment was built on a solid foundation and adequately took into account Plaintiff's OCD, particularly because Plaintiff reported his compulsion to be "fewer" and "tolerable" around the time that Dr. Rector made her diagnosis.

Accordingly, the Report and Recommendation (Doc. No. 25) is **APPROVED** and

---

and instructions with appropriate breaks for two-hours segments. The claimant was able to tolerate infrequent interactions with coworkers, He was able to adapt to occasional changes in the workplace. He was able to make simple job-related decisions on an independent basis.

(AR 12 at 27).

[2] On the website, obsessive-compulsive disorder is defined as being "a common, chronic, and long-lasting disorder in which a person has uncontrollable, recurring thoughts (obsessions) and behavior (compulsions) that he or she feels the urge to repeat over and over." https://www.nimh.nih.gov/health/topics/obsessive-compulsive-disorder-ocd/index.shtml.

**ADOPTED,** Plaintiff's Objections thereto (Doc. No. 26) are **OVERRULED**; (3) Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 18) is **DENIED**; and (4) the Commissioner of Social Security's denial of benefits is **AFFIRMED.**

The Clerk of the Court shall enter a final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE